IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ELIZABETH TRICE,**<br>8812 Glenwood Ave.<br>Kansas City, Missouri 64138<br><br>    **Plaintiff,**<br><br>v.<br><br>**FOUR B. CORPORATION d/b/a**<br>**BALL'S PRICE CHOPPER,**<br>    <u>Serve:</u> Registered Agent<br>    Long & Luder, P.A.<br>    9401 Indian Creek Parkway<br>    Suite 800<br>    Overland Park, Kansas 66210<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>) **Case No.:** 11-CV-2152 CM/JPO<br>)<br>) **Jury Trial Requested**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DAMAGES FOR RACE DISCRIMINATION, DISABILITY DISCRIMINATION & RETALIATORY DISCHARGE

COMES NOW Plaintiff Elizabeth Trice ("Ms. Trice" or "Plaintiff") and for her Complaint against Defendant Four B Corporation d/b/a Ball's Price Chopper ("Price Chopper") states and alleges:

### NATURE OF THE CASE

Ms. Trice is an African-American who is a former employee of Price Chopper. She was hired by Price Chopper in 2001 as a customer service employee and worked her way up into a management position. After she was transferred to a Price Chopper located in a predominately white suburb that was completely staffed by all-white employees, Price Chopper managers, supervisors and employees discriminated against her because of her race. Price Chopper subsequently demoted Ms. Trice to a cashier position and transferred her to yet another store.

The next store that Ms. Trice was transferred to was staffed primarily with Hispanic workers who made it known to Ms. Trice that they did not want to work with an African-American. After Ms. Trice began working as a cashier in the new store, she sustained a serious back injury at work and filed a workers' compensation claim against Price Chopper. Price Chopper denied Ms. Trice's workers' compensation claim and terminated her employment in retaliation for filing her workers' compensation claim.

## THE PARTIES

1. Ms. Trice is an individual residing at 8812 Glenwood Ave., Kansas City, Missouri 64138.

2. Four B Corporation is a Kansas corporation that owns and operates Price Chopper grocery stores in Kansas and Missouri. The Kansas Secretary of State's office lists the status of Price Chopper as "delinquent." Price Chopper is headquartered in Kansas City, Kansas. Price Chopper employed at least 1,000 employees for twenty weeks in 2009.

3. At all times relevant to this Complaint, Price Chopper was Plaintiff's employer and Plaintiff was a full-time employee.

4. Price Chopper is an employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §1981 ("§1981"), and the Kansas Act Against Discrimination ("KAAD").

5. Price Chopper is a covered entity pursuant to §101(2) of the Americans with Disabilities Act of 1990 ("ADA").

6. At all times relevant hereto, Ms. Trice had a covered disability and was a qualified individual within the meaning of the ADA.

## JURSIDICTION AND VENUE

7. Ms. Trice brought this action against Price Chopper pursuant to Title VII, §1981 and the ADA after various Price Chopper employees, supervisors and managers discriminated against her because of her race and disability.

8. This lawsuit is also brought under the KAAD and Kansas common law based on the racial and disability discrimination set forth above and the retaliatory discharge of Ms. Trice for filing a workers' compensation claim.

9. This Court has subject matter jurisdiction over the state law claims by virtue of this Court's supplemental jurisdiction under 28 U.S.C. § 1367, because the state law claims form part of the same case or controversy under Article III of the Constitution and derive from a common nucleus of operative facts, such that they are expected to be tried in one judicial proceeding.

10. Original jurisdiction lies herein pursuant to 28 U.S.C. § 1331.

11. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Price Chopper does business in this District and a substantial part of the unlawful conduct giving rise to Plaintiff's claims occurred in this District.

12. Ms. Trice filed her initial "Charge of Discrimination" ("Charge") in a timely manner with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC") on or about May 10, 2010 based on her race, disability and retaliation claims. The matter was assigned EEOC Charge number 563-2010-01240. A copy of the EEOC Charge is attached hereto as **Exhibit A).**

13. The EEOC terminated the processing of Ms. Trice's Charge and issued Ms. Trice a "Right to Sue" letter ("RTS") against Price Chopper dated December 22, 2010. This lawsuit is

brought within ninety (90) days of the date of the RTS letter. (A copy of the RTS is attached as **Exhibit B).**

14. Under the statutes cited infra, all requisite conditions precedent have been met regarding Ms. Trice's claims.

## GENERAL ALLEGATIONS

15. On or about July 29, 2001, Ms. Trice was hired by Price Chopper as a customer service employee in the store located at 4301 State Ave., Kansas City, Kansas. By May 2003, she was promoted to a cash office manager and was transferred to the store located at 12220 S. 71 Highway, Grandview, Missouri.

16. In February 2004, she was promoted to a front end manager and transferred back to the store located at 4301 State Ave., Kansas City, Kansas. Seven months later, she was promoted to service manager and transferred to the store at 55th and Leavenworth Road in Kansas City, Kansas. Ms. Trice stayed at the 55th and Leavenworth Road store until it caught on fire in 2007.

17. Price Chopper moved Ms. Trice back and forth between various stores after the fire at the Leavenworth Road store. By December 2007, Ms. Trice was permanently assigned to the store located at 300 S.W. Blue Parkway, Lee's Summit, Missouri ("Lee's Summit Store"). Lee's Summit, Missouri is a predominately white suburb.

18. At all times relevant hereto, Ms. Trice was the only African-American employee who worked at the Lee's Summit Store.

19. After Ms. Trice began working at the Lee's Summit Store, managers, supervisors and employees made it known to her that they detested having an African-American working in their store. Despite the fact that Ms. Trice was a high-ranking and capable service manager, she

was not permitted to perform her regular managerial duties and was instead given non-managerial tasks and told to just "look busy."

20. The lead cashiers did not recognize or respect Ms. Trice's managerial status and would not follow her directions or instructions. Ms. Trice told various Price Chopper managers, supervisors and employees that the racially hostile work environment made it difficult and sometimes impossible for her to perform her job duties.

21. Price Chopper supervisors and managers took no action to correct the racially hostile work environment despite the numerous requests and complaints made by Ms. Trice.

22. On one occasion, Front End Manager Debra Swope put together a store display of "the management team" to hang in the store. Ms. Swope's display omitted Ms. Trice's name and picture altogether. All of the other managers were included.

23. Ms. Trice was told by a Price Chopper vendor that Price Chopper employee Elizabeth Lewis told the vendor that Price Chopper management was trying to get rid of Ms. Trice.

24. Ms. Lewis maliciously also fabricated complaints about Ms. Trice that Ms. Trice was not responding to store pages in a timely manner.

25. In March 2008, Ms. Trice's son was struck in the face by a gun and sustained serious facial injuries. Despite the fact that Ms. Trice is the sole care provider for her son, Ms. Trice did not request any time off of work during this unsettling period of her life. Ms. Trice received some telephone calls at work from health care providers trying to arrange for medical treatment for her son's serious facial injuries. Ms. Trice was reprimanded by Price Chopper management for accepting those telephone calls at work.

26. The white employees in the Lee's Summit Store were <u>not</u> reprimanded for receiving important telephone calls at work.

27. Shortly after Ms. Trice was reprimanded for the telephone calls, Price Chopper management cut Ms. Trice's hours thereby drastically reducing her pay. Ms. Trice earned $815 per week, but $175 of that was earned by working on Sundays.

28. In March, 2009, Ms. Trice called the corporate Price Chopper check department to get advance permission to cash a $2,000 personal check. After Ms. Trice received permission from corporate, she had the Lee's Summit Store Director sign the check and then she cashed it.

29. After the check cleared, Price Chopper Loss Control Manager, Jerry Lutjen, approached Ms. Trice about the check and accused her of trying to "launder" money through the store that she was "trying to hide from the government."

30. Despite the fact that Ms. Trice had obtained permission to cash the check, she was written up for allegedly violating the $50 store limit on personal checks even though the $50 store limit only applied to customers.

31. The white employees in the Lee's Summit Store were allowed to cash personal checks over $50 without incident.

32. After the fabricated cash checking write-up, Price Chopper demoted Ms. Trice to cashier.

33. In April 2009, Ms. Trice was transferred to the store located at 4950 Roe Blvd., Roeland Park, Kansas ("Roeland Park Store"). The Roeland Park Store is a high-volume store compared to the store in Lee's Summit. There are more customers making purchases and the orders have more items including large amounts of bottled water and soda. The Roeland Park Store is predominately staffed by Hispanic workers.

34. After Ms. Trice began working as a cashier at the Roeland Park Store she noticed that the cashier position was very physically demanding for her, in that she was constantly lifting, bending and pulling items and having to sack many of the orders herself. Ms. Trice began to develop back pain, but she tried not to complain about her back pain hoping that it would dissipate after her body adjusted to the physical demands of her new position.

35. Ms. Trice also noticed that the atmosphere at the Roeland Park Store was racially hostile. She was treated differently than the white Roeland Park Store employees because she was treated like a child, while white employees were not. For example, Ms. Trice had to raise her hand if she wanted to use the restroom. Price Chopper management actually restricted her restroom use, which required Ms. Trice to obtain a doctor's note from Dr. Battmer, her gynecologist, requiring Price Chopper to let Ms. Trice use the restroom every two hours.

36. On or about June 14, 2009, at the end of her shift, Ms. Trice felt severe lower back pain that included extreme pain and numbness in her left leg.

37. On or about June 17, 2009, Ms. Trice called the Roeland Park Store and told the Service Manager that she was experiencing severe back pain.

38. Price Chopper directed Ms. Trice to OHS-CompCare for treatment of her back injury. OHS-CompCare is an "employer friendly" occupational medical provider treating Price Chopper employees who are injured on the job.

39. On or about July 8, 2009, Ms. Trice was treated at OHS-CompCare by Dr. Doris Zhong. Dr. Zhong diagnosed Ms. Trice with a lumbar strain and left leg symptoms. Dr. Zhong prescribed medication and a home exercise program to Ms. Trice and referred her to a spine specialist, pending the approval of Price Chopper.

40. Dr. Zhong gave Ms. Trice the following work restrictions: avoid lifting, pushing and pulling anything heavier than 15 pounds, alternate sitting, standing and walking as tolerated, lay down as needed for comfort, sit on a comfort chair and avoid sitting or standing in one spot for eight hours ("the Restrictions").

41. Ms. Trice knew that Price Chopper would not accommodate her given those Restrictions.

42. Price Chopper strategized to deny and fight Ms. Trice's workers' compensation claim. Price Chopper and/or its Thomas McGee Insurance claims agent hired a private investigator to trail Ms. Trice and capture selective video footage of her in a biased, prejudicial and negative light that would be utilized in trying to defeat her workers' compensation claim.

43. On or about July 11, 2009, Ms. Trice took her child to Indiana so he could bowl in a tournament. The trip had been planned for a year and this was a huge event for her son.

44. The private investigator followed Ms. Trice and her son to Indiana to capture video footage of Ms. Trice on vacation, in an effort to place her in a negative light and defeat her pending workers' compensation claim against Price Chopper.

45. In August 2009, Price Chopper Loss Control Manager, Jerry Lutjen, told Ms. Trice that she must go see her own physician from now on to obtain treatment for her back injury.

46. On or about August 17, 2009, Ms. Trice was treated by Dr. Gregory Walker for her back injury. Dr. Walker opined that Ms. Trice's back injury <u>was</u> work-related.

47. On or about September 8, 2009, Ms. Trice was deposed by her employer in connection with her pending workers' compensation claim. Price Chopper Loss Control Manager, Mr. Lutjen, was present.

48. On or about November 4, 2009, Price Chopper sent Ms. Trice to hired gun, Dr. Alexander Bailey, for an alleged independent medical examination. Dr. Bailey, who was paid by Price Chopper to render an opinion, concluded that Ms. Trice did not sustain a workers' compensation injury. Dr. Bailey spent a total of five or ten minutes talking to Ms. Trice, he did not examine her.

49. Price Chopper reported Ms. Trice to the Kansas Division of Workers' Compensation Fraud Unit hoping that the Assistant Kansas Attorney General would prosecute Ms. Trice for workers' compensation claim fraud.

50. The Kansas Assistant Attorney General declined to prosecute Ms. Trice.

51. On or about February 9, 2010, Ms. Trice returned to work for the first time since July, 2009, after completing a round of steroid injections and physical therapy prescribed by her personal physician.

52. Ten days later, Price Chopper Human Resources Manager, Ron Giangreco, terminated Ms. Trice for the stated reason that she allegedly violated Price Chopper's six month absence policy.

53. On February 3, 2011, Ms. Trice underwent spinal surgery for her back injury that Price Chopper's hired gun, Dr. Bailey, claimed was nonexistent. Dr. Steven Wilkinson, a respected neurologist, performed the spinal surgery on Ms. Trice.

**COUNT I – RACE DISCRIMINATION, HARASSMENT & RETALIATION
IN VIOLATION OF TITLE VII AND THE KAAD**

54. Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 53 as if fully set forth herein.

55. The acts described above constitute race discrimination, harassment and retaliation based on race in violation of Title VII and the KAAD.

56. Ms. Trice was purposefully placed in two Price Chopper stores with employers, supervisors and managers who overtly communicated that they did not want to work with an African-American. Price Chopper managers, supervisors and employees created a racially hostile work environment in an effort to make Ms. Trice feel uncomfortable and threatened in a concerted effort to get her to quit.

57. Price Chopper treated Ms. Trice like a second class citizen as evidenced by the following actions that were motivated by a racial animus: Ms. Trice was not allowed to perform her managerial duties; she was given menial tasks and told to "look busy"; her authority as a manager was ignored; her work was unfairly judged and scrutinized as compared to white workers; she received reprimands for acts that white employees were not reprimanded for; her hours and pay were cut; she was falsely accused of laundering money through the store; she was falsely accused of violating the check cashing policy; she was demoted; she was not allowed to have restroom breaks; she was reprimanded for using the telephone at work to address her son's medical needs when non-whites would not have been treated in this manner; she was falsely accused of filing a false workers' compensation claim and committing workers' compensation fraud; and, she was terminated in retaliation for filing a workers' compensation claim.

58. Price Chopper management participated in the discriminatory acts and practices referenced above.

59. The conduct cited above was so severe and pervasive that Ms. Trice and any reasonable person in Ms. Trice's position would reasonably view it as such.

60. The conduct cited above was adverse and damaging and caused Ms. Trice great emotional distress and anxiety. She lost sleep, could not focus at work, was constantly fearful of what else might happen to her at work, was fearful that she might be demoted or lose her job,

Case 2:11-cv-02152-CM-JPO   Document 1   Filed 03/16/11   Page 11 of 17

was fearful that if she lost her job she would not be able to support her son and was fearful that the Kansas Assistant Attorney General might believe Price Chopper management over her and prosecute her for workers' compensation fraud.

61. Ms. Trice's reputation has been damaged based on the false accusations by Price Chopper management that she "laundered money" and committed workers' compensation fraud.

62. A causal connection exists between Ms. Trice's race and Price Chopper's discrimination, harassment and retaliation. A causal connection also exists between Ms. Trice's race and Price Chopper's decision to reprimand her, demote her, terminate her, deny her workers' compensation claim, and attempt to prosecute her for workers' compensation fraud.

63. Price Chopper's acts of reprimanding, demoting, and terminating Ms. Trice as well as, denying her workers' compensation claim and attempting to prosecute her for workers' compensation fraud based on her race constitutes malice or reckless indifference to Ms. Trice's federally protected rights.

WHEREFORE Plaintiff prays for judgment against Defendant Price Chopper on Count I of her Complaint, for a finding that he has been subjected to unlawful discrimination, harassment and retaliation prohibited by 42 U.S.C. 2000(e), *et seq.*, and the KAAD; for an award of back pay, including fringe benefits, bonuses, cost of living increases and other benefits including interest; for an award of front pay in a reasonable amount (at least five (5) years); for an award of compensatory and punitive damages, including damages to compensation Ms. Trice for the damage to her reputation; equitable relief including reinstatement where Ms. Trice is not subjected to discriminatory and retaliatory conduct and/or other hostile, offensive or intimidating treatment, for her costs expended; for her reasonable attorneys' and expert fees and expenses

provided for by 42 U.S.C. § 2000(e)-5(k); and for such other and further relief as the Court deems just and proper.

## COUNT II – RACE DISCRIMINATION, HARASSMENT & RETALIATION IN VIOLATION OF SECTION 1981

64. Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 63 as if fully set forth herein.

65. The acts described above constitute race discrimination, harassment and retaliation based on race in violation of Section 1981.

66. Price Chopper management's actions of placing Ms. Trice in all-white stores with employees, supervisors and managers who did not want her there and then allowing those employees, supervisors and managers to discriminate, harass and retaliate against Ms. Trice based on her race negatively impacted all aspects of the employer-employee relationship in violation of Section 1981. Ms. Trice was subjected to many adverse employment actions that were based on her race and included, but is not limited, to the following: Ms. Trice was not allowed to perform her managerial duties; she was given meanial tasks and told to "look busy"; her authority as a manager was ignored; her work was unfairly judged and scrutinized as compared to white workers; she received reprimands for acts that white employees were not reprimanded for; her hours and pay were cut; she was falsely accused of laundering money through the store; she was falsely accused of violating the check cashing policy; she was demoted; she was not allowed to have restroom breaks; she was reprimanded for using the telephone at work to address her son's medical needs when non-whites would not have been treated in this manner; she was falsely accused of filing a false workers' compensation claim and committing workers' compensation fraud; and, she was terminated in retaliation for filing a workers' compensation claim.

67. Price Chopper management participated in the discriminatory acts and practices referenced above.

68. The conduct cited above was so severe and pervasive that Ms. Trice and any reasonable person in Ms. Trice's position would reasonably view it as such.

69. The conduct cited above was adverse and damaging and caused Ms. Trice great emotional distress and anxiety. She lost sleep, could not focus at work, was constantly fearful of what else might happen to her at work, was fearful that she might be demoted or lose her job, was fearful that if she lost her job she would not be able to support her son and was fearful that the Kansas Assistant Attorney General might believe Price Chopper management over her and prosecute her for workers' compensation fraud.

70. Ms. Trice's reputation has been damaged based on the false accusations by Price Chopper management that she "laundered money" and committed workers' compensation fraud.

71. A causal connection exists between Ms. Trice's race and Price Chopper's discrimination, harassment and retaliation. A causal connection also exists between Ms. Trice's race and Price Chopper's decision to reprimand, demote, and terminate her and deny her workers' compensation claim and attempt to prosecute her for workers' compensation fraud.

72. Price Chopper's acts of reprimanding, demoting, and terminating Ms. Trice as well as, denying her workers' compensation claim and attempting to prosecute her for workers' compensation fraud based on her race constitutes malice or reckless indifference to Ms. Trice's federally protected rights.

WHEREFORE Plaintiff prays for judgment against Defendant Price Chopper on Count II of her Complaint, for a finding that she has been subjected to unlawful discrimination, harassment and retaliation prohibited by § 1981; for an award of back pay, including fringe

benefits, bonuses, cost of living increases and other benefits including interest; for an award of front pay in a reasonable amount (at least five (5) years); for an award of compensatory and punitive damages, including damages to compensate Ms. Trice for the damage to her reputation; equitable relief including reinstatement where Ms. Trice is not subjected to discriminatory and retaliatory conduct and/or other hostile, offensive or intimidating treatment, for her costs expended; for her reasonable attorneys' and expert fees and expenses; and for such other and further relief as the Court deems just and proper.

### COUNT III – DISABILITY DISCRIMINATION, HARASSMENT& RETALIATION IN VIOLATION OF THE ADA & THE KAAD

73. Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 72 as if fully set forth herein.

74. The acts described above constitute disability discrimination, harassment and retaliation in violation of the ADA and the KAAD.

75. At all times relevant hereto, Ms. Trice suffered a back injury that was a physical impairment that substantially limited her major life activities, including working at Price Chopper.

76. Ms. Trice was a qualified individual with a disability who could perform all of the essential functions of her job as a cashier at Price Chopper.

77. Price Chopper subjected Ms. Trice to unwelcome disability harassment that included the following acts:  Dismissing the diagnosis that Dr. Zhong, Price Chopper's authorized workers' compensation medical provider, gave Ms. Trice of having a back strain with left leg symptoms; ignoring the restricted duties that Dr. Zhong gave Ms. Trice that would have required Price Chopper to give Ms. Trice an accommodation; refusing to follow Dr. Zhong's recommendation that Ms. Trice see a spine specialist; telling Ms. Trice that she must seek out her

own medical providers and pay for the treatment associated with her workers' compensation back injury; hiring and/or authorizing the use of a private investigator to trail Ms. Trice to videotape her in an effort to place her in a negative light; reporting Ms. Trice to the Kansas Division of Workers' Compensation Fraud Unit in an effort to have her prosecuted for filing a workers' compensation claim; denying Ms. Trice's legitimate workers' compensation claim; and, firing Ms. Trice for having a disability and/or filing a workers' compensation claim against Price Chopper.

78. Price Chopper harassed Ms. Trice based on her disability because Price Chopper management did not want to pay the workers' compensation claim that Ms. Trice filed against Price Chopper.

79. Price Chopper's harassment of Ms. Trice was sufficiently severe and/or pervasive to alter a term, condition, or privilege of employment. Ms. Trice was unable to earn a living because Price Chopper refused to follow the Restrictions of Dr. Zhong, Price Chopper's own authorized medical provider. Price Chopper later terminated Ms. Trice shortly after she returned to work in retaliation for exercising her compensation rights under the Kansas Workers' Compensation Act.

80. Price Chopper's intentional discrimination that prevented Ms. Trice from working and Price Chopper's termination of Ms. Trice from her employment constitutes malice or reckless indifference to the federally protected rights of Ms. Trice.

WHEREFORE Plaintiff prays for judgment against Defendant Price Chopper on Count III of her Complaint, for a finding that she has been subjected to unlawful disability discrimination and harassment prohibited by Title I of the ADA and the KAAD; for an award of back pay, including fringe benefits, bonuses, cost of living increases and other benefits including

interest; for an award of front pay in a reasonable amount (at least five (5) years); for an award of compensatory and punitive damages, including damages for the damage to her reputation; for her costs expended; for her reasonable attorneys' and expert fees and expenses and for such other and further relief the Court deems just and proper.

**COUNT IV – RETALIATORY DISCHARGE IN VIOLATION OF PUBLIC POLICY**

81. Plaintiff reasserts and re-alleges the allegations set forth in paragraph 1 through 80 as if fully set forth herein.

82. The acts described above constitute retaliatory discharge in violation of Kansas law.

83. Mr. Trice was maliciously harassed after sustaining a workers' compensation injury and exercising her rights in accordance with the Kansas Workers' Compensation Act.

84. Price Chopper discharged Ms. Trice in retaliation for pursuing a workers' compensation claim. Kansas common law expressly forbids employers from discharging employees who exercise any of their rights under the Kansas Workers' Compensation Act.

85. Price Chopper's conduct was outrageous and latent with evil motives and demonstrates a reckless indifference to Ms. Trice's rights.

86. As a result of Price Chopper's intentional harassment, retaliatory conduct, and accusations of workers' compensation fraud, Ms. Trice was humiliated, extremely embarrassed and sustained serious damage to her reputation.

87. Ms. Trice suffered severe emotional distress, lost wages, loss of benefits, loss of future wages and future benefits.

WHEREFORE, Ms. Trice prays for judgment in her favor and against Price Chopper on Count IV of her Complaint, for a finding that she was discharged in retaliation for exercising her

rights under the Kansas Workers' Compensation Act in violation of public policy and Kansas law, for an award of compensatory and punitive damages, including damages to compensate her for her damaged reputation; for her costs expended; for her reasonable attorneys' and expert fees and expenses and for such other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues triable by jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place for trial.

Respectfully submitted,

WILLIAMS LAW LLC

\S:\ Michael A. Williams
Michael A. Williams   KS Bar No. 19124
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamslawllc.com
(o) 816-876-2600
(f) 816-221-8763

Attorney for Plaintiff